UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KINGSEAL, LLC, a Florida
Limited Liability Company,

Plaintiff,

v.                                             Case No.:  2:23-cv-77-SPC-NPM

ARCH SPECIALTY INSURANCE
COMPANY,

Defendant.

_____/

## OPINION AND ORDER[1]

Defendant Arch Specialty Insurance Company ("Arch") moves the Court to dismiss Plaintiff Kingseal, LLC's ("Kingseal") Amended Complaint with prejudice.  (Doc. 7).  The parties have fully briefed the Court.  (Doc. 14; Doc. 15; Doc. 18; Doc. 20).  After careful review, and for the reasons discussed below, the Court denies the motion.

## BACKGROUND[2]

Kingseal owns and operates a nursing home in Arcadia, Florida that experienced property damage when Hurricane Irma crossed the state on

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.
[2] As it must, the Court treats the factual allegations in the Amended Complaint as true and construes them in the light most favorable to Kingseal. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

September 11, 2017.  At that time, Kingseal had an insurance contract with Arch ("Policy") that provided for $4,200,000 in real property coverage, $300,000 in personal property coverage, and $2,000,000 in business income with extra expense coverage.  (Doc. 4 ¶ 15).  Other Policy provisions included:

- Arch's obligation to pay Kingseal the increased costs of repairs, replacements, or remodeling direct physical damage to the building if necessary to meet the requirements of an ordinance or law;

- Arch's obligation to pay Kingseal for the loss in value of the undamaged portion of the building if the obligation and costs to repair, reconstruct, or remodel the undamaged portions of the building and the costs to demolish and clear the site of undamaged parts of the damaged building result from a requirement to comply with an ordinance or law; and

- Arch's obligation to pay Kingseal for loss both of personal property and of business income derived from the necessary suspension of Kingseal's operations during the restoration period.

(Doc. 4 ¶¶ 16–18).  Shortly after Hurricane Irma, Arch obtained an estimate for repairing Kingseal's storm-related property damage in the amount of $1,128,014.89.  (Doc. 4 ¶¶ 22–23).

Then, on or about January 16, 2018, the Agency for Health Care Administration ("AHCA")—which establishes and enforces standards nursing

home facilities must meet to maintain their licensure and continue to operate—notified Kingseal that, to bring the facility into compliance with applicable standards, both damaged and undamaged portions of its building would require demolition, repair, reconstruction, and remodeling. But the AHCA did not specifically identify which repairs and remodeling it would require until May 2018. Also in May 2018, DeSoto County notified Kingseal it needed to replace the windows in both the damaged and undamaged parts of its building to satisfy the Florida Building Code ("FBC") and DeSoto County's Code of Ordinances ("Code").

Arch's estimate for repairing Kingseal's storm-related property damage predated Kingseal's communications with the AHCA and DeSoto County, so it did not account for the additional repairs and renovations required by the AHCA, the FBC, and the Code.

Kingseal retained a general contractor to conduct *all* necessary repairs and renovations. And after the extent of the work was known, Kingseal notified Arch of all renovations, repairs, and replacement construction items mandated by the AHCA and DeSoto County to comply with applicable laws and ordinances. This included repairs and renovations of the entire building—those portions damaged by Irma and portions unaffected by the storm. The work was completed at a total cost of $3,711,192.81, of which Arch has paid $1,073,529.88. (Doc. 4 ¶ 36). Kingseal realized personal property damage of

$156,466.17, of which Arch has paid $44,000. (Doc. 4 ¶ 37). And Kingseal lost $4,423,742.11 in business income because it could not use portions of its building during the renovation period; Arch has paid only $1,764,025 of that amount. (Doc. 4 ¶ 38).

Kingseal sued Arch in the Circuit Court for Florida's Twelfth Judicial Circuit on November 23, 2022, and it amended its complaint on January 13, 2023. (Doc. 1-1; Doc. 4). The Amended Complaint alleges Arch breached the Policy by not honoring its Ordinance or Law[3] compliance obligations and not paying for Kingseal's covered losses.[4] (Doc. 4). On February 2, 2023, Arch removed the case to this Court based on diversity of citizenship. (Doc. 1). Arch has now moved to dismiss the Amended Complaint.[5] (Doc. 7).

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all

---

[3] Relevant portions of the Policy refer to "Ordinance or Law Coverage." (Doc. 4-1 at 82–87). But because some cases cited in this Order refer to this type of coverage as "Ordinance *and* Law," the two labels will be used interchangeably.

[4] The Amended Complaint concerns Arch's obligations related only to the renovations and repairs undertaken at the behest of AHCA and DeSoto County. Kingseal's claims related to the physical damage caused by Hurricane Irma are beyond the scope of the Amended Complaint and this Order.

[5] This is an Amended Motion to Dismiss. Arch filed its initial Motion to Dismiss along with its notice of removal. (Doc. 3).

factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Id.* But conclusory allegations are not presumed to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott*, 610 F.3d 701, 708 n.2 (11th Cir. 2010). A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, "the-defendant-unlawfully-harmed-me accusation" is insufficient. *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). And courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## DISCUSSION

Arch argues Florida's five-year statute of limitations for breach of contract claims bars this action.[6] It states the five-year limitations period runs

---

[6] In its Amended Motion to Dismiss, Arch argues Kingseal's *initial* complaint, on its face, shows that Kingseal's claim is untimely. (Doc. 7 at 6). But a district court may not consider

from the date of loss, which for hurricane claims is the date of landfall. (Doc. 7 at 5 (citing Fla. Stat. § 95.11(2)(e)).  And Arch contends the trigger for the Policy's Ordinance or Law endorsement is also the date the property sustained covered physical damage. (Doc. 7 at 7).  Because Hurricane Irma made landfall on September 11, 2017, but Kingseal did not sue until November 23, 2022,[7] Arch argues the Amended Complaint is time-barred.

To be clear, Arch does not contend Kingseal's claim falls outside the policy's scope.  It argues only that the Court should dismiss this case with prejudice because "the date of loss occurred more than five years before [Kingseal] filed suit." (Doc. 7 at 6).  Arch refines this argument in its reply and contends, "the initial trigger for potential Ordinance or Law coverage remains when the direct physical loss or damage occurred." (Doc. 18 at 3).

Kingseal responds that neither the Policy nor the Ordinance or Law endorsement define "date of loss" in the manner advanced by Arch.  Kingseal argues the cases Arch relies on are readily distinguishable,[8] and Florida

---

the allegations of a previous complaint on a motion to dismiss.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (as a matter of law, an amended complaint supersedes former pleadings and abandons the allegations those pleadings contain) (citation omitted).  The Court's analysis is, therefore, focused entirely on the Amended Complaint.

[7] Just over two months after the limitations period expired.

[8] The Court agrees.  All the cases Arch cites in its motion for its date-of-loss argument (Doc. 7) are factually distinguishable, three of them do not apply Florida law, and (with one notable exception) none of them address Ordinance or Law coverage, even generally.  The one exception is *Chisholm Properties South Beach, Inc. v. Arch Specialty Insurance Co.*, in which Arch argued the plaintiff could not recover under its Ordinance or Law coverage because "'[the plaintiff had] not repaired or replaced the windows' and, '[w]ithout such repairs, there

precedent supports the position that Kingseal's loss was triggered when it first became obligated to incur additional costs to comply with applicable ordinances and laws. Kingseal also notes that any ambiguities in construing the Policy must be resolved in favor of coverage.

"'Ordinance and Law' is the cost of bringing any structure . . . into compliance with applicable ordinances or laws." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th Dist. Ct. App. 2013). Ordinance or Law coverage gives the insured additional reimbursement "in amounts and on other terms specified in the insurance policy, to cover costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris." *Noa v. Fla. Ins. Guar. Ass'n*, 215 So. 3d 141, 143 (Fla. 3d Dist. Ct. App. 2017) (internal quotation marks omitted) (citation omitted).

---

are no repair costs to indemnify.' " No. 21-CV-22960, 2022 WL 356452, at *2 (S.D. Fla. Feb. 7, 2022). But even *Chisholm* is silent about the "date of loss" for Ordinance or Law coverage.

The cases Arch relies on in its notice of supplemental authority and reply (Doc. 13; Doc. 18) are also readily distinguishable. And the case most salient to the issues presented here concerned an Ordinance or Law endorsement's contractual two-year time limit, not the date of loss or application of § 95.11(2)(e)'s five-year limitation period. *See Sunflower Condo. Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 19-CV-80743, 2020 WL 4501805, at **6–8 (S.D. Fla. Apr. 28, 2020), *report and recommendation adopted*, No. 19-CIV-80743-RAR, 2020 WL 5757085 (S.D. Fla. Sept. 28, 2020). Furthermore, in *Sunflower*, it was undisputed that "[n]o government authority ha[d] enforced an ordinance or law or demanded a code upgrade or replacement of any building component, as a result of any damage to the buildings' roofs." 2020 WL 4501805, at *3.

The Florida Supreme Court discussed Ordinance and Law coverage in *Ceballo v. Citizens Property Insurance Corp.* and explained that "to incur" a loss eligible for Ordinance and Law coverage "means to become liable for the expense." 967 So.2d 811, 815 (Fla. 2007).  And of particular importance here, Ordinance and Law damage is ordinarily not ripe for determination at the original appraisal because it is recoverable only when the insured incurs or becomes liable for additional expenses in "compliance with current ordinances in order to complete repairs." *Jossfolk,* 110 So.3d at 113 (citing *Ceballo*).

The Policy's Ordinance or Law Coverage Endorsement provides, in part:

> D. Coverage
> . . .
> 3. Coverage  C  –  Increased  Cost  Of  Construction Coverage
>    a. With  respect  to  the  building  that  has  sustained covered  direct  physical  damage,  we  will  pay  the increased cost to:
>       (1) Repair or reconstruct damaged portions of that building; and/or
>       (2) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
>    when  the  increased  cost  is  a  consequence  of  a requirement  to  comply  with  the  minimum standards of the ordinance or law.

(Doc. 4-1 at 83–84).  This endorsement creates coverage for increased costs of construction to damaged and undamaged portions of a covered building when that increase results from a requirement to comply with the standards of applicable ordinances or laws.  (Doc. 4-1 at 83–84).

Arch argues this coverage is triggered when the property covered sustained physical damage—here, Hurricane Irma's landfall—so the date of loss would have been September 11, 2017. (Doc. 7 at 7). But Kingseal contends that Arch's interpretation is too restrictive, that "loss" under the Ordinance or Law endorsement is not limited to physical damage by a covered event, and that neither the Policy nor the Ordinance or Law endorsement define the "date of loss" as Arch would have the Court believe. (Doc. 15 at 16–18). In support, Kingseal identifies several examples within the Ordinance or Law endorsement that illustrate a more expansive definition of "loss" than Arch advances.[9] (Doc. 15 at 17–18 citing Doc. 4-1 at 83–84, 86). The Court concludes the Ordinance or Law endorsement plainly contemplates and creates coverage for "loss" beyond "physical loss," specifically loss created by the need to comply with an applicable ordinance or law.

---

[9] "D. Coverage
1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building
With respect to the building that has sustained covered direct physical damage, we will pay under Coverage A for the *loss in value* of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law." (Doc. 4-1 at 83).

"E. Loss Payment
. . .
2. When there is a *loss in value* of an undamaged portion of a building to which Coverage A applies, the loss payment for that building . . . will be determined as follows." (Doc. 4-1 at 84).

"G. Under this endorsement we will not pay for *loss due to any ordinance or law* that:
1. *You were required to comply with before the loss*, even if the building was undamaged; and
2. You failed to comply with." (Doc. 4-1 at 86).

And consistent with binding Florida case law, the Court also concludes that Kingseal did not incur its loss until the AHCA (and, later, DeSoto County) notified Kingseal it was liable for additional repairs and renovations required by the AHCA, the FBC, and the Code.  *See Ceballo*, 967 So. 2d at 815 (" 'to incur' [a loss] means to become liable for the expense."); *see also Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 665 (11th Cir. 2010) ("[plaintiff] is not entitled to law and ordinance damages because it never repaired the property and never actually incurred increased damages due to the enforcement of laws or ordinances"); *Jossfolk*, 110 So. 3d at 113 (plaintiff incurred a loss eligible for coverage under its supplemental Ordinance or Law endorsement when the city required it to comply with current ordinances, which obligated plaintiff to additional expense, beyond the already-appraised costs of repairing its roof).

Kingseal's "loss" here did not result from Hurricane Irma, nor was it triggered by the storm's landfall.  Instead, Kingseal incurred a loss when the AHCA and DeSoto County required Kingseal to undertake additional repairs and renovations to bring its facility into compliance with applicable standards and to satisfy the FBC and the Code.   Kingseal's Ordinance or Law endorsement was intended to address just such a loss.  And because Kingseal sued within five years of that loss, this case does not run afoul of § 95.11(2)(e)'s five-year limitation period.

Accordingly, it is now

**ORDERED:**

Defendant Arch Specialty Insurance Company's Motion to Dismiss (Doc.

7) is **DENIED**.

        **DONE** and **ORDERED** in Fort Myers, Florida on April 27, 2023.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record